# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 6709 | **DATE** | March 15, 2000 |
| **CASE TITLE** | | Bouchard vs. Apfel | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons stated in the attached Memorandum Opinion and Order, the ALJ's decision is affirmed. Accordingly, Bouchard's motion for summary judgment [# 8-1] is DENIED and the Commissioner's motion for summary judgment [#12-1] is GRANTED. This case is CLOSED.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| | Notices mailed by judge's staff. | | | MAR 16 200 | | |
| | Notified counsel by telephone. | | | date docketed | | 24 |
| X | Docketing to mail notices. | | | docketing deputy initials | | |
| | Mail AO 450 form. | | | | | |
| | Copy to judge/magistrate judge. | | | | | |
| dc(lc) | courtroom deputy's initials | | | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KATLEEN BOUCHARD,                    )
                                     )
            Plaintiff,               )
                                     )   No. 98 C 6709
      v.                             )
                                     )   HONORABLE DAVID H. COAR
KENNETH S. APFEL,                    )
Commissioner of Social Security,     )
                                     )                   **DOCKETED**
            Defendant.               )
                                                         MAR 1 6 2000

## MEMORANDUM OPINION AND ORDER

Katleen Bouchard ("Bouchard") brings an action for judicial review of a final

administrative decision of the defendant Kenneth Apfel, Commissioner of the Social Security

Administration ("Commissioner"). Before this Court are Bouchard's motion for summary

judgment and the Commissioner's cross-motion for summary judgment. For the reasons

discussed herein, Bouchard's motion is denied and the Commissioner's motion is granted.


## I. Standard of Review

The Social Security Act authorizes judicial review of the Commissioner's final decision.

42 U.S.C. § 405(g); Wolfe v. Shalala, 997 F.2d 321, 322 (7th Cir. 1993). Where the

Commissioner commits an error of law, "reversal is required without regard to the volume of the

evidence in support of the factual findings." Imani v. Heckler, 797 F.2d 508, 510 (7th Cir.

1986). With respect to the Commissioner's conclusions of fact, the reviewing court's role is

limited. The Commissioner is charged with weighing the evidence, resolving conflicts, and making independent findings of fact. Butera v. Apfel, 173 F.3d 1049, 1054 (7th Cir. 1999). As the reviewing court, this court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner, that is, unless the findings of the Commissioner are not supported by substantial evidence. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); Hickman v. Apfel, 187 F.3d 683, 684 (7th Cir. 1999). If the reviewing court determines that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision, the court may reverse the decision and immediately award benefits only if the record can "yield but one supportable conclusion" and there exist no unresolved factual issues. Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993).

## II. Factual Background

On December 31, 1992, Bouchard applied for disability insurance benefit. She alleged a disability commencing November 12, 1990, due to emphysema and chronic obstructive lung disease ("COPD"). On November 2, 1993, a hearing ("1993 hearing") was held before ALJ John L. Mondi. The ALJ denied Bouchard's claim. In his March 5, 1994 decision ("1994 decision"), the ALJ found that Bouchard maintained a residual functional capacity for at least light work subject to environmental limitations which might exacerbate her respiratory condition. Because Bouchard was able to work at a significant number of jobs in the national economy, the ALJ deemed her not disabled.

In appealing this decision to the Appeals Council, Bouchard submitted a report from a psychologist who suggested that Bouchard suffered from a significant mental impairment. In view of this evidence, the Appeals Council remanded the matter for further proceedings. On November 7, 1995, a supplemental hearing ("1995 hearing") was held before ALJ Mondi. In an April 26, 1996, decision ("1996 decision"), the ALJ found that Bouchard was entitled to a period of closed disability and disability insurance benefits commencing on May 28, 1993, and ending on November 7, 1995. Bouchard now appeals the 1996 decision to this Court.

The following medical findings were derived from the record. Dr. James H. Cohn ("Cohn"), a doctor of internal medicine, treated Bouchard from November 12, 1990 until May 1, 1991 for her pulmonary condition. (R. 458). Cohn diagnosed Cohn with a mild case of chronic obstructive pulmonary disease (R. 261). In May 1991, Cohn reported that Bouchard could sit, stand and walk for four hours a day; lift 20 pounds continuously and up to 100 pounds occasionally; and bend and reach occasionally. (R. 463). He noted that Bouchard was subject to environmental restrictions, but urged her to resume working full-time. (Id.)

Dr. Alan Leff ("Leff"), Chief of the Pulmonary and Critical Care Section of the University of Chicago Hospital, began treating Bouchard in May 1991. (R. 469-502). In a January 30, 1992 letter, Leff stated that Bouchard was diagnosed with an advanced and progressive form of emphysema which rendered her "totally disabled." (R. 263). He opined that Bouchard was incapable of carrying and lifting objects greater than 200 feet. (R. 263). On March 30, 1992, prior to Bouchard's discharge from the hospital for the birth of her child, she was treated at Leff's clinic for a respiratory complication. On September 6, 1994, Leff predicted

-3-

that Bouchard was still only able to perform less than sedentary work.[1] (R. 400-01). He stated that her condition could be exacerbated such that she could be expected to miss at least two months of work per year. (R. 401). In September 1994 and April, October, and December 1995, Leff concluded that Bouchard could not work full-time because multiple absences would be required due to her pulmonary condition. (R. 400-01, 467-68, 503-06, 523-24).

In February 1992, Dr. Hyde, a state agency physician, reviewed Bouchard's record and determined that she could perform work at the light exertional level,[2] as long as she was not exposed to fumes, odors, dust, gases, and poor ventilation. (R. 268-75). In September 1992, Dr. Edith Panopio performed a consultative examination of Bouchard. (R. 284-87). A chest x-ray showed that Bouchard's lungs were clear. (R. 288). On pulmonary function testing, Bouchard's FVC[3] result of 2.36 was 75% of predicted performance and her FEV1[4] of 1.74 was 72% of

---

[1] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

[2] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting actors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

[3] FVC (forced vital capacity) is the total amount pf air a person can exhale, after taking as deep a breath as possible, and exhaling as rapidly as possible. David A. Morton, III, M.D., Medical Proof of Social Security Disability 44 (1983 and Supp 1996).

[4] The forced expiratory volume in one second, designated as FEV1, is the "amount of air that a person can breathe out in one second, after taking as deep a breath as he can and then exhaling the air from his lungs as forcefully as possible." Morton, supra, at 44.

-4-

predicted performance. (R. 289). In October 1992, Dr. Jiminez, a state agency physician, reviewed the record and opined that Bouchard could perform work at the medium exertional level, as long as she avoided concentrated exposure to fumes, odor, dust, and gases. (R. 294-301).

## III. Analysis

### A. Denial of Subpoena Requests

Prior to the 1995 hearing, in a letter dated October 25, 1995, Bouchard requested that the ALJ subpoena Hyde, Jiminez, Panopio, and Cohn, the doctors on whom the ALJ relied in his 1994 decision. (R. 49-50). At the 1995 hearing, however, the ALJ denied the subpoena requests. (R. 101). Bouchard claims that the ALJ committed reversible error by denying her the opportunity to submit interrogatories to and cross-examine these doctors.

Under the regulations, subpoenas are issued where they are "reasonably necessary to the full presentation of the case" or where the subpoenaed individuals would provide "important facts that could not be proved without the issuance of the subpoenas." Butera, 173 F.3d at 1057 (citing 20 C.F.R. §§ 404.950(d)(1), 416.1459(d)(1)). The party requesting the subpoena must state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena. 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2). The regulations are consistent with the Administrative Procedures Act ("APA"), which entitles the administrative claimant to "such cross-examination as may be required for a full and true disclosure of the facts." Butera, 173 F.3d at 1057 (citing 5 U.S.C. § 556(d)).

Quoting a Fifth Circuit case, our appellate court announced that "cross examination is

thus not an absolute right in administrative cases." 173 F.3d at 1057 (citing Central Freight

Lines. Inc. v. United States, 660, F.2d 1063, 1068 (5th Cir. 1982)). Underscoring this point, the

Seventh Circuit, citing with approval to a Sixth Circuit opinion, noted, "We do not read Perales

[supra] as suggesting that the right to subpoena a witness is 'absolute' in the sense that a party

who requests a subpoena is automatically entitled to its issuance whether or not he has complied

with the published rules governing such matters." 173 F.3d at 1058 (citing Calvin v. Charter, 73

F.3d 87 (6th Cir. 1996)). The court also agreed with the Ninth Circuit's position that a disability

claimant is "not entitled to unlimited cross-examination, but is entitled to such cross-examination

as may be required for a full and true disclosure of the facts." Id. (citing Copeland v. Bowen,

861 F.2d 536, 539 (9th Cir. 1988)). The ALJ has discretion to decide when cross-examination is

warranted. Id.

     Applying this standard to the instant case, this Court concludes that the subpoenaed

doctors were neither required for a full presentation of Bouchard's case at the 1995 hearing nor

necessary to provide specific, important facts that could not be established in their absence.

Upon reviewing the ALJ's 1996 decision, the Appeals Council remanded the case for further

evaluation of Bouchard's mental condition, and for "any further action needed to complete the

administrative record." (R. 432-33). The ALJ denied the subpoena requests because he deemed

the doctors' presence immaterial to the issue of Bouchard's mental condition.[5] (R. 101). The

ALJ also stated that he would consider rendering de novo findings of Bouchard's physical

capabilities if new and material evidence relating back to the 1994 decision were submitted. (Id.

---

[5] The subpoenaed doctors' opinions of Bouchard's health had been limited to her
physical condition.

at 101, 102, 103).

Bouchard maintains that the cross-examination and, at the very least, the interrogatories of the subpoenaed doctors was necessary "in order to determine the basis of their opinions." (Pl. Reply at 13). She argues that a "full presentation of the case necessitated an opportunity to question these physicians, especially in light of the time that had passed, the conflicting opinions and the fact that the same ALJ had already given the State Agency's doctors's [sic] opinions controlling weight over the treating physician Dr. Leff in a prior decision." (Id. at 14). In sum, Bouchard sought to have the doctors present at the 1995 hearing so that she could attack the weight of their opinions. (See Pl. Memo. at 15; R. 106).

Contrary to Bouchard's contention, the presence of Doctors Hyde, Jiminez, Panopio and Cohn at the 1995 hearing was not necessary for a full and true disclosure of the facts. In essence, their opinions did not go toward the dual-purpose of the remanded 1995 hearing: to determine whether Bouchard suffered from a mental impairment and to consider new evidence. The subpoenaed doctors proffered opinions of Bouchard's physical condition, which was not material to this second hearing. Indeed, the fact that time had passed since the doctors rendered their original diagnoses, and the fact that new material had been adduced since that time to support Leff's conclusions should have been considered by the ALJ in weighing the subpoenaed physicians' reports. However, the ALJ did not need the doctors to be present in order to accord the appropriate weight to their opinions. Independent of the doctors' responses thereto, the purported new developments, to the extent that they were well-supported, could cast doubt on the doctors' opinions, regardless of whether they were present at the 1995 hearing. Even if she did not take advantage of such an opportunity, Bouchard nevertheless had the opportunity to

-7-

introduce the opinions of other doctors who, in light of the new evidence, could lend support to their case.

Therefore, Bouchard requested a subpoena so that she could undermine the weight of the doctors' opinions. The requested subpoenas were neither "reasonably necessary to the full presentation of the case" nor would they have enabled the presentation of "important facts that could not be proved without the issuance of the subpoenas." Butera, 173 F.3d at 1057. Accord Perales, 402 U.S. 389, 406-07, 91 S. Ct. at 1430 (holding that due process requires an "effective opportunity to defend by confronting any adverse witness" does not apply where "there is professional disagreement with the medical conclusion"); Butera, 173 F.3d at 1058 (claimant "offered no convincing argument why cross-examination of [Department of Health and family Services physicians] was necessary to his particular case. The only reasons [claimant] offered – that [the physicians] had not examined him personally, and that their opinions were based on an incomplete record – are arguments related to the weight of the evidence, not as to why cross-examination was necessary.")


B.  Substantial Evidence Supporting ALJ's Decision

To be eligible for Disability Insurance Benefits, a claimant must prove that she is "under a disability" as defined by the Social Security Act. 42 U.S.C. § 423(a)(1)(D). A claimant suffers from a disability if she is unable to engage in any substantial gainful activity on account of a physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). A claimant's disability is evaluated through a five-step sequential process. 20 C.F.R. § 404.1520. Initially, the burden of proof rests

with the claimant, who must prove that (1) she is not engaging in "substantial gainful activity;" and (2) she has a "severe" impairment; and (3) her impairments meet or equal one of the impairments enumerated in the "Listing of Impairments" set forth in Appendix 1 of 20 C.F.R Part 404, Subpt. P, or (4) she is unable to perform "past relevant work." 20 C.F.R. 404.1520; Thomas E. Bush, 1 Social Security Disability Practice § 112 (2d ed. 1999). At step five, the burden shifts to the Commissioner to show that the claimant, considering her age, education and work experience, is able to engage in other substantial gainful employment  Butera, 173 F.3d at 1054; Bauzo v. Bowen, 803 F.2d 917, 923 (7th Cir. 1986).

In the instant case, the ALJ found that Bouchard was entitled to a period of disability and disability insurance benefits from May 28, 1993, through November 7, 1995, on the basis of mental impairment. Bouchard refutes the ALJ's 1996 decision to deny her benefits before May 28, 1993, and between November 7, and December 3, 1995, the date on which her disability insurance eligibility expired. With respect to the pre-May 1993 period, the ALJ found that Bouchard was capable of performing a significant range of sedentary and light work, subject to environmental limitations, especially in light of her transferrable skills. (R. 36, ¶ 10). There also existed, the ALJ noted, a significant range of unskilled work for Bouchard. (Id.) Thus, although Bouchard proved that she was incapable of engaging in her past work as a film producer, she could still perform a significant number of jobs in the national economy. With respect to the relevant post-November 7, 1995 period, the ALJ found that Bouchard's condition had improved to the extent that she regained the ability to perform "a significant range of at least unskilled competitive work activity at the sedentary and light exertional levels." (R. 37, ¶ 18). The ALJ therefore concluded that she was able to perform a significant number of jobs.

In concluding that Bouchard could work at sedentary and light exertional jobs, the ALJ discredited the opinion of Leff, Bouchard' treating physician, as well as the testimony of Bouchard herself. Accordingly, this Court will first assess whether the ALJ's rejection of Leff's conclusions was substantially warranted. This Court will then review whether the ALJ properly discounted Bouchard' subjective complaints of pain. Finally, the Court will discuss whether the remainder of the evidence substantially supported the ALJ's finding that Bouchard was not disabled under the meaning of the regulations.

### 1. Controlling Weight of Leff's Medical Opinion

The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992). The Commissioner cannot render his own independent medical determinations about the claimant. Id. Rather, his decision must be grounded in medical evidence. Under the regulations, a treating physician's opinion is accorded controlling weight if the opinion is well-supported by clinical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527. This rule recognizes that the treating source is likely to be the medical professional most able to provide a detailed, longitudinal picture of the claimant's medical impairment. Id. at § 404.1527(d)(2). Accordingly, the factors to be considered in determining the weight to be accorded a treating physician's opinion include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) the consistency between the opinion

and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors which support or contradict the opinion. Id.

Here, Leff, a pulmonary specialist who began treating Bouchard in May 1991, reported that Bouchard was diagnosed with an advanced and progressive form of emphysema which rendered her "totally disabled." (R. 263). However, the ALJ determined that Leff's opinion was not entitled to controlling or even significant weight. (R. 26). The ALJ's decision to disregard Leff's opinion was based on several factors.

First of all, the ALJ deemed Leff unreliable, noting that he had become "more of an advocate than an objective source of information." (R. 25). In arriving at this conclusion, the ALJ noted that Leff misrepresented himself on an August 8, 1992, report. (R. 276). When asked to indicate the "dates of hospitalization due to [asthmatic] attacks," Leff wrote March 30, 1992. In fact, Bouchard had been hospitalized for childbirth, not a respiratory emergency. Although Bouchard saw Leff during her stay for a respiratory complication, Leff, wittingly or unwittingly, mislead the Bureau of Disability Determination Services, who had requested the information. (R. 25-26).

Moreover, the ALJ found that Leff exaggerated the severity of Bouchard's respiratory condition in light of the objective medical evidence. The ALJ specifically pointed to Leff's conclusion that Bouchard's FEV1 level of 1.02 rendered her "totally non-functional" whereas consulting physicians disagreed with Leff's interpretation. (R. 26). From 1991 until 1995, Bouchard showed a FEV1/FVC ratio ranging from 50 to 66 percent, and often well over 60 percent. (R. 27, 372, 518-19). In a December 18, 1995 letter, Leff attempted to discount the apparent normalcy of the FEV1/FVC results. He explained:

-11-

[Bouchard's] total lung capacity is 140% of predicted (6.54 liters vs. a predicted 4.66 liters). Through loss of elastic recoil, her lungs are 2 liters larger than they should be. As a result, during forced expiration, the air remaining in her lungs (residual volume) is 2.33 L where it should be only be [sic] 1.47L. What is the effect of this on her spirometry? Because so much air is trapped, the FVC is low and hence her FEV1/FVC ratio fails to estimate the severity of her airflow obstruction. Thus, her flow rate of 50% FEV1/FVC is exceptionally bad when her lung volume is taken into account. Hence, a mere evaluation of her FEV1/FVC ratio severely underestimates this patient's exercise tolerance or capacity. . . .

Finally, let me state that looking at the FEV1/FVC ratios alone in the clinic is not an accurate estimate of her functional capacity. <u>Her flows must be interpreted in the context in [sic] the degree of her hyperinflation (see above) and in the context of the number of times during which I have communicated with this patient on the phone</u> for her dyspnea and incapacity to carry out her daily chores.

(R. 523-24) (emphasis added).

The ALJ, however, was not convinced. Under the regulations, an impairment must be established by medical evidence including physiologic signs, symptoms, and laboratory findings, not merely a claimant's statement of such symptoms. 20 C.F.R. § 404.1508. Telephone complaints are no exception to the requirement of observable physiologic abnormalities. Thus, the fact that Leff, as stated above, relied on Bouchard's telephone accounts of her symptoms, the ALJ determined, undermined his explanation of the FEV1/FVC results. (R. 28). Thus, Leff was unable to reconcile the FEV1 results with a finding that Bouchard was capable of working.

The ALJ also marshaled additional objective evidence discrediting Leff's finding. On April 15, 1991, Bouchard's chest x-ray was normal. (R. 261). September 22, 1992, her chest and lung x-rays indicated no respiratory distress or prolonged expiratory phase, although the examining doctor noticed diminished breath sounds. (R. 286). At that time, Bouchard's FVC was at 75% of predicted performance and her FEV1 was at 72 % of predicted performance. (R. 289). Not only did the test results suggest that Bouchard's condition was not severe, but the

frequency of her medical care also invited this conclusion. As of September 23, 1992, Bouchard

had never been hospitalized, or been in the emergency room due to her respiratory condition. (R.

284). The ALJ noted that Bouchard sought treatment on an infrequent basis, all during Leff's

office hours, from the period between May 1991 to June 1992. (R. 27). At the 1995 hearing,

Bouchard testified that she had last visited the emergency room in 1993. (R.122). Although

upper respiratory infections during the relevant period were reported on several occasions,

including February and April 1993, the ALJ deemed this infrequent. (R. 27). Even during her

pregnancy, the ALJ observed, Bouchard only experienced two exacerbations of her COPD, once

in September 1991, and in January 1992.

In addition, the ALJ found that Leff's reports regarding Bouchard's medical condition

was internally inconsistent. Leff indicated that Bouchard had a debilitating breathing condition

accompanied by frequent attacks, but his portrayal was inconsistent with Leff's March 1992

statement that she was "currently controlled" on Prednisone. (R. 26-27). See 20 C.F.R. §

404.1529(c)(3)(iv) (effectiveness of claimant's medication is considered in evaluating credibility

of symptoms). On September 6, 1994, Leff stated that Bouchard could perform "purely

sedentary work," as she was able to sit 8 hours at one time; stand 2 hours and walk 1 hour;

occasionally lift 20 pounds and frequently lift 5 pounds; and use her hands and feet for repetitive

action. (R. 26, 400-01) In that same report, Leff asserted that Bouchard's attacks would render

her incapable of working for at least two months a year. (Id.) In a report dated April 28, 1995,

however, Leff noted that Bouchard could not work 8 hour workdays. (R. 26, 505). He predicted

that Bouchard would be absent from work at least twice a month due to her condition. (R. 26,

506). The discrepancy in Leff's reports may have been justified had Bouchard experienced a

-13-

substantial decline in her condition between the time of the two reports. Yet the record does not support such a deterioration.

Finally, and most importantly, the ALJ found that Leff's opinion contradicted the opinions of other doctors who concluded that Bouchard was capable of working. The ALJ found that Leff's opinion "stands alone in marked contrast" to that of Cohn, a prior treating physician. (R. 25). Moreover, the ALJ noted, Cohn's opinion was consistent with those of Panopio, Hyde and Jiminez. (R. 24). In May 1991, Cohn opined that Bouchard could perform, at a minimum, light work because she was able to sit, stand, and walk four hours a day; lift 20 pounds continuously and up to 100 pounds occasionally; and bend and reach occasionally. (R. 28, 463). In contrast, in a letter dated January 30, 1992, Leff opined that Bouchard was "unable to travel, carry objects, lift, and/or walk greater than 200 feet due to progressive shortness of breath." (R. 263). As a result, he concluded, she is "totally disabled." (R. 263). Less than two weeks later, in a report dated February 11, 1992, Hyde found that Bouchard was capable of light work because she was able to stand and/or walk with normal breaks for up to 6 hours in a normal workday, frequently lift up to 10 pounds, and sit with normal breaks for a total of about 6 hours in an 8 hour workday. (R. 269). On June 19, 1992, Leff stated that Bouchard was capable of less than sedentary work because she could not carry or lift over 5 pounds. (R. 337). He continued to maintain a restrictive view of Bouchard's capacities on August 8, 1992, when he reported that Bouchard could not perform any work-related activity other than hearing and speaking. (R. 276). Less than two months later, on October 1, 1992, Jiminez concluded that Bouchard could perform at least light work. (R. 295).

Because the ALJ can only discount Leff's opinion if the substantial evidence is

contradictory, Bouchard attempts to construe Leff's findings as not inconsistent with those of the other doctors. Leff's conclusion that Bouchard was incapable of working, submitted contemporaneously with the reports of the doctors indicating otherwise, clearly contradict those proffered by the other doctors. In another attempt to reconcile Leff's finding of total disability with the opinions proffered by the others, Bouchard argues that Leff did not assert that Bouchard was incapable of doing sedentary work, but rather that even if she could do such work, excessive absences and rest breaks would prohibit her from maintaining sustained employment. (R. 401, 505). First of all, as outlined above, Leff did in fact contend (at least initially) that Bouchard was incapable of even sedentary work, even if he later reformulated his opinion. Second, both Jiminez and Hyde took into account Bouchard's need for rest periods when they rendered their conclusions. (R. 269, 295). Therefore, Bouchard cannot argue that Leff's finding of disability is warranted when rest periods and absences are considered.

The Court finds that the ALJ was substantially justified in refusing to give controlling weight to Leff's determination that Bouchard was incapable of working. On the one hand, Leff, a pulmonary specialist, maintained a long treatment relationship with Bouchard. See Stephens v. Heckler, 766 F.2d 284, 289 (7th Cir. 1985) (stating that the extent to which familiarity with a patient and expertise as a specialist "weigh in [on] a particular case is a question for the Secretary [of Health and Human Services'] delegate, subject only to the rule that the final decision must be supported by 'substantial evidence.'") However, Leff's opinion was not supported by the relevant evidence and thus did not merit controlling weight.

The objective medical evidence-- including the fact that Bouchard's condition was controlled by medication (underscored further by the fact that she no longer needed medication

in 1995) as well as the fact that her test results were within the normal range (including her FEV1/FVC results and the chest and lung x-rays)-- undermined Leff's conclusion. Moreover, the opinions rendered by doctors Hyde, Jiminez, and Panopio, who reviewed Bouchard's condition contemporaneously with Leff, lend credence to Cohn's interpretation. It is true that Hyde, Jiminez and Panopio possessed neither the extensive treating relationship with Bouchard that Leff maintained with her, or his impressive credentials in the field of pulmonary medicine. Nevertheless, because the objective evidence supported their conclusion, and in light of the questions surrounding Leff's objective neutrality, it was reasonable for the ALJ to find that Leff's opinion was not entitled to controlling weight. See Reynolds v. Bowen, 844 F.2d 451, 454 (7th Cir. 1988) (observing that "while the treating physician's opinion is important, it is not the final word on a claimant's disability").

Urging this Court to find that the ALJ's refusal to adhere to Leff's finding of disability constitutes reversible error, Bouchard proffers several Seventh Circuit cases. The cited cases, however, are distinguishable. In those cases, the the treating physician's opinion was uncontested, but the ALJ nonetheless impermissibly substituted his independent medical judgment for that of the treating physician. See, e.g., Micus v. Bowen, 979 F.2d 602, 608 (7th Cir. 1992) (noting that "respect should be afforded the uncontested opinion of the treating physician"); Scivally, 966 F.2d at 1077 ("In the absence of contradictory medical evidence, the ALJ impermissibly substituted his own medical judgment for that of the physicians."). In contrast, the ALJ in the instant case relied on the medical reports of Bouchard' former treating physician and three consulting physicians to render his conclusion that she could perform sedentary to light work. Compare 966 F.2d at 1077 (observing that the ALJ "did not rely upon

-16-

any medical report or opinion to support this conclusion"). The ALJ's reliance on these doctors formed the basis for his determination, such that it did not constitute an impermissible medical decision.

This case presented a close call. Doctors proffered contradictory opinions. In light of the medically ambiguous nature of this case, it must be reiterated that this Court cannot "decide facts anew, reweigh the evidence, or substitute our own judgment" for that of the Commissioner. 966 F.2d at 1075. In the end, it was up to the ALJ to weigh Leff's findings against those of Cohn, Hyde, Jiminez and Panopio. The ALJ set forth a reasonable explanation of why he considered Leff's findings to be unreliable. In determining that Bouchard was capable of engaging in gainful activity, the ALJ buttressed his conclusion with ample support from the record. This Court cannot say that the ALJ's determination was not supported by substantial evidence.

### 2. Bouchard's Credibility

If supported by medical signs and findings, a claimant's subjective complaints of pain must be considered by the ALJ. Scivally, 966 F.2d at 1077 ("A claimant's statement of symptoms is not sufficient to establish the existence of an impairment; some objective evidence should be present."). See also 42 U.S.C. § 423(d)(5)(A) (1986), as amended by Social Security Disability Benefits Reform Act of 1984, Pub. L. 98-460 (quoted in Walker v. Bowen, 834 F.2d 635, 641 (7th Cir. 1987) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings . . . which could reasonably be expected to produce the pain or other symptoms alleged); 20 C.F.R. § 404.1529.

In the instant case, the ALJ stated in his 1996 decision that:

The medical records and opinions indicate a respiratory impairment less severe than that depicted in the claimant's testimony. Her testimony at the first [1993] hearing described frequent and severe respiratory attacks with disabling fatigue and shortness of breath. Yet, the medical records and even some of the claimant's actions and activities are inconsistent with disabling symptoms, either physical or mental, at least until the late Spring of 1993, and since at least the day of the [1995] supplemental hearing. The claimant's testimony, to the extent she is portraying marked limitations throughout the entire period in question, is not supported by the evidence of record such as, for example, a showing that she required frequent emergency medical treatment. Indeed, her only hospitalization was for childbirth in March 1992. The claimant's testimony of severe symptoms beginning as of the alleged onset date is also not supported by the objective signs and findings, by treatment records, or even consistent with the claimant's activities within the period in question, activities which include contemplating a return to ger very stressful past work, getting married, having a child, and moving from an apartment in the city into a two story home in an older suburb.

(R. 21).

As discussed previously, the objective medical evidence did not support Bouchard's allegations concerning her limitations. Three doctors pronounced Bouchard fit for at least sedentary work. In addition, the ALJ found that Bouchard's credibility was questionable. Even though she alleged that her disability started in November 1990, she contemplated returning to work full-time in May 1991. (R. 462). The ALJ observed that Bouchard's attempt to return to work was inconsistent with a disabling impairment. (R. 29). Moreover, Bouchard testified that she worked part-time. Her description of the nature of her part-time work, however, was inconsistent. In a December 5, 1991 report, Bouchard stated that she was paid for three months of part-time work. (R. 20, 221). At the 1993 hearing, she informed the ALJ that she had worked part-time until June or July, which was two months longer than she originally claimed. (R. 20). Finally, at the 1996 hearing, Bouchard testified that she hadn't actually "worked" part-time, but had merely went into the office to check her phone massages and pick up her mail. (R. 20, 113).

Although Bouchard's inconsistent information did not directly concern her respiratory condition, her inconsistent testimony, together with the substantial medical evidence, warranted the ALJ's determination that Bouchard lacked credibility. See Walker, 834 F.2d at 641-42 (affirming ALJ's decision to discredit claimant's testimony where three doctors contradicted him and his testimony was inconsistent). Again, a determination of credibility of witnesses is within the province of the "trier of fact, here the ALJ, who is in the best position to observe the witnesses." Id. Although the Court disagrees with the ALJ's consideration of Bouchard's marital status and childbearing as indicators of her ability to work, see Lowe v. Apfel, No. 98-3972 SC, 1999 WL 447597 (N.D. Cal. June 28, 1999), those improper considerations were harmless. In the final analysis, the ALJ was substantially justified in concluding that Bouchard's testimony lacked credible evidence.

### 3. Substantial Evidence of Non-Disability

As discussed above, the medical evidence proffered by doctors Cohn, Panopio, Jiminez and Hyde lent substantial support to the ALJ's determination that Bouchard had the functional capacity to perform sedentary and light work, subject to environmental restrictions. In light of Bouchard's functional capacity, the vocational expert testified that she could nevertheless perform a significant range and number of jobs. (R. 177-78). Even if Bouchard had some difficulty maintaining concentration, the vocational expert presented a number of additional jobs that Bouchard could handle. (R. 178-80). Hence, the expert's testimony constituted substantial evidence supporting the ALJ's finding that Bouchard could perform significant gainful activity, thereby disqualifying her from disability benefits.

### IV. Conclusion

For the foregoing reasons, the ALJ's decision is affirmed. Accordingly, Bouchard's

motion for summary judgment [# 8-1] is DENIED and the Commissioner's motion for summary

judgment [#12-1] is GRANTED.

Enter:

David H. Coar

**United States District Judge**

**Dated:**  March 15, 2000