Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 6709 | **DATE** | MARCH 29, 2001 |
| **CASE TITLE** | Bouchard v. Apfel | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Plaintiff's motion to alter or amend judgment [Doc. #29-1,2] is DENIED.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 29 2001 date docketed | 33 |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | CM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| dc(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| KATLEEN BOUCHARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KENNETH S. APFEL, Commissioner of ) <br> Social Security, ) <br> ) <br> Defendant. ) | No. 98 C 6709 <br><br> HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

In December 1991, Plaintiff Katleen Bouchard ("Bouchard") applied for Social Security Disability Insurance Benefits, alleging that she had been disabled since November 12, 1990 due to emphysema. Administrative Law Judge John Mondi ("ALJ") found in March 1994 that Plaintiff was not disabled. On appeal, Bouchard's case was remanded to the ALJ for additional inquiry into Bouchard's mental condition. In April 1996, the ALJ issued a decision partially favorable to Bouchard, whereby she was deemed disabled from May 28, 1993 to November 7, 1995 due to depression. On March 15, 2000, this Court granted defendant Kenneth S. Apfel's, Commissioner of Social Security ("Commissioner") motion for summary judgment and affirmed the Commissioner's decision.

Bouchard urges this court to alter or amend that judgment pursuant to Fed. R. Civ. P. 59(e). In support of her motion, Bouchard argues: (1) that the ALJ failed to make a de novo assessment of Bouchard's physical impairment on remand; and (2) that the ALJ's conclusion that

1

Bouchard was not disabled due to her respiratory condition was not based on substantial evidence. For the reasons discussed below, Bouchard's motion is denied.

Bouchard claims that it was error for the ALJ to deny her requests to subpoena the doctors the ALJ relied on in his previous decision to dispute the opinion rendered by Bouchard's treating physician. By denying the subpoena request, Bouchard's argument goes, the ALJ failed to consider all of the evidence necessary to make a de novo inquiry into her pulmonary condition.

When the Appeals Council remands a case, the Council generally vacates the ALJ's previous decision in its entirety.[1] See Social Security Hearings, Appeals and Litigation Law Manual (HALLEX) II-5-102. Thus, the ALJ was charged with not only reviewing Bouchard's mental condition, as was directed by the remand, see R.[2] at 432-33, but also making a de novo examination of Bouchard's physical condition. Pursuant to the Appeal Council's remand, the ALJ referred Bouchard for a consultative psychiatric evaluation and subsequently deemed her disabled for a closed period due to her mental condition. See R. at 438-42, 35-37. The ALJ's inquiry did not stop there, however. In addition to evaluating Bouchard's mental state, the ALJ conducted a de novo review of her physical disability claims. "While the primary purpose of the

---

[1] HALLEX provides the following guidelines:
The Appeals Council will continue to vacate the administrative law judge's decision upon remand except in two circumstances: (1) when the Administrative Law Judge's decision is partially favorable and the Appeals Council agrees with the favorable conclusion but not the entire decision; and (2) in concurrent claims under separate Titles, when the Appeals Council finds the decision pertaining to one Title is supported by substantial evidence but not the decision under the other Title.
HALLEX II-5-102.

[2] Denotes a cite to the record.

supplemental hearing was to address the new evidence of a mental impairment," the ALJ noted, "I have again reviewed the evidence regarding the claimant's breathing impairment." R. at 23. And he did so. His 1996 decision sets forth a detailed and thorough inquiry into the medical findings and physician opinions concerning Bouchard's pulmonary condition. See R. at 20-21, 23-30.

That the ALJ declined to issue the subpoena does not mean that he failed to discharge his duty to conduct a de novo review of the evidence. Bouchard urged the ALJ to accept the disability diagnosis articulated by Dr. Alan Leff ("Leff"), her treating physician. When the ALJ declined to give controlling weight to Leff's opinion and instead concurred with the conclusions rendered by Drs. James Cohn ("Cohn), Edith Panopio, Arthur Hyde ("Hyde"), and Francisco Jiminez ("Jiminez"), Bouchard requested a subpoena of those doctors so that she could cross-examine them about their medical opinions at the post-remand hearing. As this court discussed in its previous opinion, see Mem. Op. at 6-8, Bouchard had not shown that requiring the physician's presence at the hearing was "reasonably necessary to the full presentation of [her] case or that the physicians would provide important facts that could not be proved without the issuance of the subpoenas." Butera v. Apfel, 173 F.3d 1049, 1057 (7th Cir. 1999). See also 20 C.F.R. § 404.950(d).

To review briefly, in its summary judgment opinion, this court deemed unnecessary the subpoenaed doctors' presence at the post-remand hearing because the facts that Bouchard sought to establish through a cross-examination of the doctors could be established through extrinsic evidence. See Mem. Op. at 7. In other words, Bouchard had not demonstrated that the presence of the doctors at the hearing was required for the full presentation of her case; after all, the same

3

ends could be achieved by proffering evidence and outside opinions aimed at undermining the weight of the subpoenaed doctors' opinions. Bouchard misconstrues the court's opinion when she argues that the court erroneously placed the burden on the plaintiff at the post-remand hearing to lend support to her treating physician's opinion. Rather then requiring the plaintiff to buttress the medical opinions favorable to her, the court was suggesting that, in order to justify the issuance of a subpoena, Bouchard carried the burden of proving that a subpoena was necessary. See Butera, 173 F.3d at 1058 (finding that plaintiff's failed to show necessity of cross-examination where plaintiff sought to undermine weight of opposing doctors' opinions).

Bouchard points out, for example, that extensive treatment records were not available to doctors Hyde and Jiminez when they evaluated Bouchard's record for the purpose of rendering their medical assessments. Doctors Hyde and Jiminez completed their RFC assessments in February and October of 1992, respectively, but the record was subsequently supplemented with test results and additional records pre- and post-dating their review, notes Bouchard. Furnishing the ALJ with these supplemental records at the post-remand hearing would be sufficient to contest the doctors' opinions; they need not have been present at the the hearing. Therefore a de novo examination of the facts did not require subpoenas to be issued.

Next, Bouchard challenges the ALJ's findings concerning Bouchard's Residual Functional Capacity ("RFC"). The ALJ found that Bouchard was entitled to a period of disability and disability insurance benefit from May 28, 1993 to November 7, 1995 on the basis of a mental impairment. With respect to the pre-May 1993 period, the ALJ determined that Bouchard was capable of performing a significant range of sedentary and light work, subject to environmental limitations. R. 36, ¶ 10. With respect to the post-November 1995 period, the

4

ALJ found that Bouchard's condition had improved to the extent that she regained the ability to perform a "significant range of at least unskilled competitive work activity at the sedentary and light exertional levels." R. 37, ¶ 18.

Bouchard challenges the ALJ's decision to discredit Leff's assessment that Bouchard was disabled as a result of her pulmonary condition. Specifically, Bouchard contends that the ALJ incorrectly concluded, contrary to Leff's assessment, that Bouchard could work for regular and continuous periods. Indeed, Leff had noted that Bouchard would miss significant number of days of work due to her condition. In a September 6, 1994 report, Leff determined that Bouchard was capable of performing sedentary work for a full workday, but she would miss work at least two months a year. R. at 26, 400-01. In an April 28, 1995 report, Leff's diagnosis changed-- Bouchard was no longer capable of handling eight hour workdays, and she would be absent at least twice a month. R. 26, 505, 506. The record, however, did not support such a marked change in Bouchard's condition. Leff's blatant inconsistency rendered his opinion unreliable. Moreover, the contrasting opinions of other doctors further undermined Leff's assessments. See Mem. Op. at 8-17 (discussing the record evidence, internal inconsistencies, and opposing medical opinions discrediting Leff's findings). Therefore, the ALJ was justified in discounting Leff's findings, including his conclusions regarding Bouchard's inability to sustain full time work.

The assessments given by other doctors did not contradict Leff, argues Bouchard, because the other doctors did not proffer an opinion as to the number of days Bouchard could be expected to miss work. Leff's conclusion did not go uncontradicted, however. Although doctors Cohn, Hyde, and Jiminez did not explicitly address the number of days Bouchard would be expected to

miss work, a determination that Bouchard was capable of full-time work on a continuous basis was implicit in their RFC assessments. In fact, the Social Security Ruling 96-8p defines an RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day for 5 days a week, or an equivalent work schedule." These doctors' conclusion that Bouchard was capable of light work, then, involved, by definition, a finding that she could work on a "regular and continuous basis."[3] The ALJ's determination that Bouchard was not entitled to a period of disability issuance benefits was substantially supported by the record.

Bouchard reiterates additional arguments that were previously addressed in this court's memorandum opinion granting defendant's summary judgment motion. The court declines to rehash those same issues. See, e.g., Mem. Op. at 15-16 (discussing how the ALJ was substantially justified in refusing to give controlling weight to Leff's assessment)

---

[3] If, at step four of the sequential analysis, a claimant successfully shows that she can no longer perform past relevant work, step five shifts the burden of proof to the Commissioner to establish that the claimant can perform other work. Butera v. Apfel, 173 F.3d 1049, 1054 (7th Cir. 1999). Because Bouchard demonstrated that she could no longer engage in her former job, the burden shifted to the Commissioner to prove that she could engage in other substantial employment. Bouchard asserts that the ALJ failed to carry his burden of establishing that Bouchard had the RFC to sustain full-time work. However, the medical assessments of doctors Cohn, Hyde, and Jiminez, including their implicit finding that Bouchard could work on a regular and continuing basis, satisfied this burden.

## Conclusion

For the foregoing reasons, plaintiff's motion to alter or amend judgment is denied.

Enter:

*David H. Coar*
David H. Coar
United States District Judge

Dated:   MARCH 29, 2001